UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

FLOSSIE J. DYCHE                      PLAINTIFF

v.                      CIVIL ACTION NO. 3:14-CV-00518-CRS

CIRCLE K STORES, INC., et al                      DEFENDANTS

**MEMORANDUM OPINION**

I.     Introduction

On August 29, 2013, plaintiff Flossie Dyche fell at a Circle K gas station parking lot. Dyche sued Circle K Stores, Inc. and Mac's Convenience Stores, LLC d/b/a Circle K, d/b/a Circle K Midwest (together, "Circle K"). Dyche's sole claim against Circle K is for negligence. Compl. 3, ECF No. 1-2. Circle K removed to this Court after the state court dismissed a non-diverse defendant with prejudice. Notice of Removal 1, ECF No. 1.

Circle K moved for summary judgment, which Dyche opposes. For the reasons below, the Court will grant summary judgment to Circle K.

II.     Summary Judgment Standard

A party moving for summary judgment must show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). After time for discovery, the Court must enter summary judgment against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A dispute about a material fact is genuine when the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty*

1

*Lobby*, 477 U.S. 242 (1986). The Court's function is not to weigh the evidence, but to determine whether a genuine issue for trial exists. *Id.* at 250.

III. Facts

Circle K operates a convenience store and gas station at 7800 St. Andrews Church Road in Louisville, Kentucky. The parking lot is busy because many drivers cut through it to avoid the stoplight at the nearby intersection. The convenience store also has a high volume of customers during second shift.

On August 29, 2013, around 5:50 in the afternoon, Dyche stopped at the gas station to buy gas. She "always" bought her gas there. Dyche Dep. 22, ECF No. 19-1. A surveillance video captured most of the following events.

It was a sunny day. Dyche walked in to the convenience store without incident and paid for her gas. She walked out of the convenience store holding some cash. As she walked to her car, "something caught [her] foot," and she fell. *Id.* at 33.

The "something that caught [Dyche's] foot" was a line of elevated pavement in the parking lot (the "elevated pavement"). When a customer leaves the convenience store, the customer encounters a line of pavement elevated one to two inches so that the area near the gas pumps rises above the area immediately outside the convenience store. The elevated pavement is lighter in color than the non-elevated portion.

Dyche had never had any problems walking in the parking lot before. She did not notice the change in elevation when she entered the store, and she did not notice it when she left the store. Dyche testified that she was looking to see "how far it was to the van" and was not looking at the ground. Dyche Dep. 26.

After Dyche fell, several people came to her aid: a nurse, a retired sheriff, and a Circle K cashier named Michael Kohl. Another Circle K employee brought Dyche a chair while she waited for an ambulance. While he assisted Dyche, Kohl told her that he "fell in the same spot a couple of days ago." *Id.* at 22.

Kohl testified that before Dyche fell, he had told two of his managers at Circle K that the elevated pavement was a "trip hazard if somebody's not paying attention they're going to trip on it and more likely, the company'll get sued." Kohl Dep. 54, ECF No. 19-2. He had "stumbled" on the elevated pavement previously, but he did not fall. *Id.* Kohl also testified that he was unaware of any similar incidents and whether any customer had ever complained about the elevated pavement. Kohl no longer works at Circle K.

IV. Discussion

Circle K asks the Court to grant summary judgment. Defs.' Mot. Summ. J., ECF No. 19. Circle K argues that "the area where plaintiff fell was open and obvious, was not an unreasonable hazard, and plaintiff's accident was not foreseeable." Defs.' Mem. 4, ECF No. 19-6.

A. General Principles

A plaintiff alleging negligence must prove that the "defendant owed the plaintiff a duty of care; the defendant breached the standard by which his or her duty is measured; and consequent injury." *Pathways, Inc. v. Hammons*, 113 S.W.3d 85, 88 (Ky. 2003); *but see*, *Shelton v. Ky. Easter Seals Soc., Inc.*, 413 S.W.3d 901, 906 n.10 (Ky. 2013) (noting that "traditional legal education emphasizes four elements of negligence: duty, breach, causation, and injury.").

A land possessor owes a general duty of reasonable care. *Shelton*, 413 S.W.3d at 908. Specifically, a land possessor has a duty to invitees "to discover unreasonably dangerous

3

conditions on the land and either eliminate or warn of them." *Id.* at 909. Invitees are individuals who enter the "premises at the express or implied invitation of the owner or occupant on behalf of mutual interest to them both, or in connection with the business of the owner or occupant." *Id*.

B. The Open and Obvious Doctrine

Traditionally, if a condition was open and obvious, the court would determine that the defendant owed no duty to the plaintiff. *Id.* at 910. However, Kentucky law on premises liability and the open and obvious doctrine has changed in the last decade. *See id.* at 912; *Dick's Sporting Goods v. Webb*, 413 S.W.3d 891, 895 (Ky. 2013); *Ky. River Med. Ctr. v. McIntosh*, 319 S.W.3d 385 (Ky. 2010).

"An open and obvious condition is one in which the danger is known or obvious." *Shelton*, 413 S.W.3d at 906. The plaintiff "knows of a condition when she is aware, 'not only ... of the existence of the condition or activity itself, but also appreciate[s] ... the danger it involves." *Id.* (brackets in original). "And the condition is *obvious* when 'both the condition and the risk are apparent to and would be recognized by a reasonable man, in the position of the visitor, exercising ordinary perception, intelligence, and judgment." *Id.*

In *McIntosh*, a paramedic fell after tripping on an unmarked curb outside an emergency room entrance when she guided a patient inside. 319 S.W.3d at 387. She had guided about four hundred patients to the emergency room without injuring herself. *Id.* The Kentucky Supreme Court addressed whether the open and obvious doctrine barred the paramedic from recovering. *Id.* at 388. Discussing the national trend, the Kentucky Supreme Court cited the Restatement (Second) of Torts:

> A possessor of land is not liable to his invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to

4

>them, *unless the possessor should anticipate the harm despite such knowledge or obviousness.*

*Id.* at 389. The court emphasized two circumstances when it is foreseeable that an open and obvious danger will cause injury: 1) when an invitee might be distracted from a danger, or may forget a danger previously discovered; or, 2) when an invitee might choose to encounter a danger because the advantages of doing so outweigh the apparent risks. *Id.* at 383.

The paramedic's injury was foreseeable because "the Hospital had good reason to expect that a paramedic, such as McIntosh, would be distracted as she approached the emergency room entrance." *Id.* at 393. Additionally, the hospital had reason to believe the invitee might forget the danger: "Evidence was introduced showing that having such a curb at an emergency room entrance is very unusual, if not unique." *Id.* at 394. Finally, the plaintiff's familiarity with the curb did not bar her recovery, but was relevant to her comparative fault. *Id.* at 394.

Under *Shelton*'s breach analysis, the jury should normally determine the foreseeability of the risk of harm. 413 S.W.3d at 914. The plaintiff became entangled in wires strung alongside her spouse's hospital bed and fell. *Id.* at 903. She testified that she "tried to avoid" and "be careful of" the cords. *Id.* at 904. The Kentucky Supreme Court reversed the Kentucky Court of Appeals' decision upholding the grant of summary judgment to the rehabilitation center. *Id.* Under the modern approach, the question is whether the land possessor satisfied the standard of care owed to the plaintiff. *Id.* at 910 – 11. The court reframed the standard of care regarding open and obvious dangers as whether the existing duty was *fulfilled*, not whether a duty *existed*. *Id.* at 905.

Ultimately, the court may grant summary judgment to the land possessor "if reasonable minds cannot differ or it would be unreasonable for a jury to find breach or causation." *Id.* at 916. Although Kentucky "case law has been clear that an invitee is not required to watch each

footstep as they walk," *Webb*, 413 S.W.3d at 900 n.30, an invitee cannot "walk blindly, irrespective of obvious danger." *Id.* at 900.

    C. Application

    1. Whether the elevated pavement was an open and obvious condition.

As discussed above, a condition is open and obvious when the plaintiff knows of the existence of the condition or activity itself and appreciates the danger it involves. *Shelton*, 413 S.W.3d at 906. Or, the condition is open and obvious when both the condition and the risk would be recognized by a reasonable person, "in the position of the visitor, exercising ordinary perception, intelligence and judgment. *Id.*

Examples of open and obvious conditions include: a twelve-inch orange warning cone, wires next to a hospital bed, crumbling gravel on the unpaved portion of a parking lot, and a "very unusual" curb next to an emergency room. *See Wiley v. Sam's Club*, 2015 WL 3687440 *1, *4 (W.D. Ky. 2015); *Shelton*, 413 S.W. 3d at 906; *Lucas v. Gateway Cmty. Servs. Org.*, 343 S.W.3d 341, 346 (Ky. Ct. App. 2011); *McIntosh*, 319 S.W.2d at 393.

In contrast, black ice, water on the floor next to wet floor mats, and a parking barrier spanning two parking spaces are not open and obvious conditions. *Garrity v. Wal-Mart Stores East, Ltd. P'ship*, 288 F.R.D. 395, 405 (W.D. Ky. 2012) (finding genuine issue of material fact as to whether the black ice on which the plaintiff slipped was open and obvious); *Webb*, 413 S.W.3d at 896 ("Here, because of the appearance of the tile and the water, the condition was not easily perceptible without closer inspection beyond the exercise of reasonable care."); *Edwards v. Target Corp.*, 2012 WL 1231773 *1,*4 (W.D. Ky. 2012) (explaining how a parking barrier's layout was so unusual as to not be obvious).

Dyche argues that the elevated pavement was not open and obvious because "It is only visible when not covered by a passing vehicle, and when no one is looking directly at it instead of paying to traffic in the parking lot or looking toward the direction where one is walking." Pl.'s Resp. 13, ECF No. 20.  Circle K argues that the elevated pavement is open and obvious because "The plainly obvious one to two inch elevation change in pavement coupled with the readily apparent change in color of the pavement was not an unreasonable risk requiring Circle K to eliminate or warn about."  Defs.' Mem. 8 – 9.

While Dyche did not know about the elevated pavement, a reasonable person in her position, exercising ordinary perception, intelligence and judgment, *see Shelton*, 413 S.W.3d at 906, would have recognized the elevated pavement and appreciated the danger of tripping over it.  Kohl, the former Circle K cashier, testified that the elevated pavement was "plainly obvious" to someone looking at the ground:

> Q [Pete Pullen, Attorney for Circle K]: You can – as you just testified to, you can clearly see that line in those photos, right?
>
> A [Kohl]: Unless you're paying attention to it.  If you're not – If you' re walking straight as I'm looking dead at you, if you're walking straight, you're not going to see the line.
>
> Q: So the only way that you can't see it is if you're not paying attention.
>
> A: Not paying att – If you're not looking down.  If you're looking straight forward, and walk – paying attention to where you're going to, you ain't going to see it.
>
> Q: Otherwise it's plainly obvious.
>
> A: Plainly obvious, yes.  If you're looking down at it, it's plainly obvious. Because like I said, I've tripped on it, stumbled on it in the past.
>
> Q: The only way you'd do that is if you're not paying attention, correct?
>
> A: Uh-huh.  If you're focused on something else or just sweeping the lot.
>
> Q: In other words, you're not paying attention where you're going, that's the only way you –
>
> A: I guess you could answer it like that.  You can say it like that, yes.  If not, I don't know how else you're going to trip on it.  I mean it's a lip that somebody of

> her age, you know, who was somebody who can barely walk, can't pick up their feet very high is going to trip on it, yeah.
>
> Q: It's not disguised, though.
>
> A: It's not disguised. What do you mean like disguised?
>
> Q: There's nothing hiding it from sight.
>
> A: Hiding it from sight?
>
> Q: Yeah. If you're looking at it, you can see it, right?
>
> A: Yeah. You can see it if you're looking at it.

Kohl Dep. 38 – 39. Additionally, still photographs from the surveillance video show a clear line where the pavement raises, and the difference in color between the two parts of the pavement. *See, e.g.*, Surveillance Video Still, ECF No. 21-2.

A reasonable person does not "walk blindly" through a commercial space. *Cf. Webb*, 413 S.W.3d at 900. Similar to the *Wiley* plaintiff's admission that she "wasn't looking" at the ground in a retail store, *see* 2015 WL 3687440 at *5, Dyche testified that she did not notice the raised parking lot or any changes on it before the fall. Dyche Dep. 34. Similar to the *Lucas* plaintiff's admissions regarding the good weather and that nothing obstructed her view before her fall, *see* 343 S.W.3d at 345 – 46, Dyche testified that she was "lookin' where the van was," Dyche Dep. 30, and the weather was nice and dry. *Id.* at 33.

Viewing the evidence in the light most favorable to Dyche, the Court concludes that the elevated pavement was open and obvious. Kohl testified that the elevated pavement was not hidden or disguised, and was "plainly obvious" to someone looking at it. Kohl Dep. 38 – 39. A reasonable person in Dyche's position walking in the parking lot, exercising ordinary perception, intelligence, and judgment, would have recognized the condition of the elevated pavement and appreciated the danger of tripping over it.

    2. Whether the elevated pavement created an unreasonable risk.

8

Having found that the elevated pavement was an open and obvious condition, the Court must address whether Circle K fulfilled its duty of care.

Under *Shelton*, a land possessor owes a duty to an invitee to eliminate or warn of unreasonable risks of harm. 413 S.W.3d at 914. An unreasonable risk "is one that is recognized by a reasonable person in similar circumstances as a risk that should be avoided or minimized, or one that is in fact recognized as such by a particular defendant." *Id.* (quotations omitted). "Normally, an open-and-obvious danger may not create an unreasonable risk. Examples of this include a small pothole in the parking lot of a shopping mall; steeps stairs leading to a place of business; or perhaps even a simple curb." *Id.*

Elevated pavement in a parking lot is analogous to a "small pothole in the parking lot of a shopping mall" or a "simple curb" because it is an uneven section of pavement that everyone must occasionally avoid in a parking lot. *See id.* Pedestrians walking in parking lots encounter uneven pavement every day. It would be unreasonable for a jury to find that Circle K breached the standard of care under these facts. *See Shelton*, 413 S.W.3d at 916. Here, Dyche was not a trained emergency professional rushing a patient into an emergency room like in *McIntosh*. Uneven pavement in a parking lot is common, unlike the "very unusual curb" described in *McIntosh*. Also, Dyche was not distracted by kissing her bed-ridden spouse in a rehabilitation facility as in *Shelton*.

*Lucas* and *Wiley* are particularly instructive. In *Lucas*, the Kentucky Court of Appeals affirmed summary judgment to a land possessor. 343 S.W.3d at 346. The plaintiff fell on "crumbling gravel" as she walked from the paved portion of the parking lot to the unpaved portion. *Id.* at 342. She admitted she was familiar with the lot and admitted that she had used caution in the past. *Id.* at 346.

9

In *Wiley*, the district court granted summary judgment to the land possessor. 2015 WL 3687440 at *1. The plaintiff fell on a twelve-inch orange warning cone next to a flooring display at a Sam's Club. *Id.* She testified that she did not see the cone until it was too late. *Id.* at *4. The court held that the cone did not present an unreasonable risk of harm: "Because Kentucky law holds that a shopper may not walk blindly through a store, Sam's Club acted reasonably in expecting that patrons would see and avoid the orange cone on the ground." *Id.* at *5.

Here, like the plaintiff in *Lucas*, Dyche was familiar with the parking lot because she always bought her gas there. Like the plaintiff in *Wiley*, Dyche testified that she did not see the elevated pavement until after she fell.[1] Although Dyche argues that customers in the parking lot may be distracted by vehicle traffic, Pl.'s Resp. 16, Dyche's testimony indicates that she was not distracted by other cars but rather, she was "seeing how far it was to the van." Dyche Dep. 26.

The Court is compelled to note that the world is not flat, and neither are all parking lots. Indeed, if a one to two inch span of elevated pavement in a parking lot presents an unreasonable risk of harm, landowners across the Commonwealth of Kentucky would have to repave thousands of parking lots, sidewalks, and stoops to meet an unreasonable standard: flat surfaces everywhere. *Shelton* does not require that, and it would be unreasonable for a jury to conclude otherwise. *Shelton* requires only that land possessors act reasonably to eliminate or warn of

---

[1] Circle K says that Dyche testified that she "was not distracted." Defs. Mem. 2 (citing Dyche Dep. 26.) However, the deposition transcript reads:
   [Pete Pullen, counsel for Circle K] Q: Do you recall being destructed by anything?
   [Dyche] A: Never felt better I told you. As I say it ruined my life. Might as well have killed me.
Dyche Dep. 26.
   The Court may have been inclined to treat "destructed" as a typographical error, but Dyche's answer indicates that the attorney asked her whether she had been "destructed," and she answered accordingly.

10

*unreasonable* risks of harm.  413 S.W.3d at 914.  Kentucky law does not require a landowner to flatten all surfaces so as to eliminate every risk to those who are not paying attention.

Viewing the evidence in the light most favorable to Dyche, the Court concludes that the elevated pavement in the Circle K parking lot did not present an unreasonable risk of harm.  Thus, Circle K did not breach the standard of care.  Dyche's negligence claim fails as a matter of law.  She has failed to make a showing sufficient to establish the element of breach, which is essential to her case, and on which she will bear the burden of proof at trial.  *See Catrett*, 477 U.S. at 317.  The Court will grant summary judgment to Circle K on Dyche's negligence claim.

V.     Conclusion

The Court will grant summary judgment to Circle K.  The Court will dismiss Dyche's claim with prejudice.  The Court will enter an order in accordance with this opinion.

November 20, 2015

**Charles R. Simpson III, Senior Judge**
**United States District Court**

11